FILED
2012 Feb-23  PM 05:03
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## MIDDLE DIVISION

| | |
|---|---|
| JOE TAYLOR, et al., | ) |
| | ) |
| **Plaintiffs,** | ) |
| | ) |
| v. | ) **Case No.: 4:11-CV-3336-VEH** |
| | ) |
| CITY OF GADSDEN, AN | ) |
| ALABAMA MUNICIPAL | ) |
| CORPORATION, et al., | ) |
| | ) |
| **Defendants.** | ) |

---

## MEMORANDUM OPINION AND ORDER

Before the court is the Defendants' Motion To Dismiss (the "Motion"), which argues that the Plaintiffs have not alleged a claim upon which relief can be granted, and its accompanying brief in support thereof, as well as several submissions of authorities.  (Docs. 8, 10, 11 and 14).  Plaintiffs oppose the Motion and filed their brief in opposition.  (Doc. 16).  The Defendants filed their Reply brief (doc.17). Accordingly, the Motion is now under submission.

The court has considered the pleadings, all filings relating to the Motion, and the applicable law.  For the following reasons, the court finds the Motion is due to be **DENIED**.

I.    **BACKGROUND**[1]

Plaintiffs, firefighters employed by the City of Gadsden, filed this putative class action lawsuit alleging that mandatory increases to their required pension contributions, imposed by a recent act of the Alabama Legislature, violate Article I, section 10 of the U.S. Constitution and Section 22 of the Alabama Constitution. (Complt. ¶ 1).

Each plaintiff alleges that he is an employee of the Gadsden Fire Department. (*Id.* ¶¶ 3–9). In 2002, the local retirement system for police and firefighter employees of the City of Gadsden was folded into the State of Alabama Employees Retirement System ("ERS"), after a series of "[e]xtensive meetings . . . between representatives of the firefighters, police officers, and the City regarding the terms upon which the employees would join ERS." (*Id.* ¶¶ 28–29). The decision was accomplished through a series of statutes, ordinances, and resolutions that were passed or approved by the Legislature, the Gadsden City Council, and by vote of a majority the incumbent employees to join the ERS. (*Id.* ¶¶ 27-33; *see also* Docs. 10-4 through 10-9). Certain of the ordinances required the Mayor's approval and signature. (Complt. ¶¶ 29, 31). As a result of these statutes, ordinances, and resolutions, full-time

---

[1]  In evaluating a motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6), the factual allegations of the complaint are assumed to be true. Thus, the court sets out the pertinent facts of this case based on the allegations of Plaintiffs' Complaint. (Doc. 1).

certified municipal firefighters were required to contribute six percent of their earnable compensation toward the retirement contribution that their employer was required to make based on the actuarial valuation amounts periodically determined by Alabama's ERS statute.  (*Id.* ¶ 30; *see also* Doc. 10-4).  In addition, to fund a supplemental fund, one ordinance required a special contribution of an additional five percent for a three-year period from November 1, 2002, through September 20, 2005. (Complt. ¶¶ 29, 34; *see also* Doc. 10-4).

As qualifying municipal firefighter employees, each Plaintiff in this case is an ERS participant and has contributed the mandatory six percent of their compensation, plus the additional five percent to fund the supplemental fund during the designated three-year period.  (Complt. ¶¶ 1, 34, 37).  ERS participants are vested in the right to receive pension benefits after ten years of creditable service upon reaching age 60. (*Id.* ¶ 20).

Act no. 2011-676 of the Alabama Legislature authorized municipalities to raise the contribution rate of firefighters from six percent to 8.25 percent on October 1, 2011, and to 8.5 percent on October 12, 2012.  (*Id.* ¶ 25).  The City of Gadsden passed a resolution on August 23, 2011, "irrevocably" electing to implement the increase in employee contribution rates for law enforcement officers and firefighters as specified in Act no. 2011-676.  (*Id.* ¶ 35).

3

Plaintiffs' Complaint alleges that the City of Gadsden entered into a contractual relationship with its firefighter employees "when the employees and the City negotiated, agreed to and approved the City's termination of the City's Policemen's and Firemen's Pension Fund, the assignment of such assets and liabilities to the ERS, the election to come under ERS and under [Ala. Code] § 36-27-6, and the agreement to provide extra contributions in the Supplemental Fund for a three (3) year period from 2002 through 2005." (*Id.* ¶ 37). Further, Plaintiffs allege that "[u]nder the decisions of Alabama courts, the vested rights of participants in the ERS are enforceable contractual rights that may not be unilaterally altered at the will of the state or its political subdivisions." (*Id.* ¶ 39).

The Complaint also alleges that the decision of the City of Gadsden to raise the contribution requirements of firefighter participants in the ERS is "neither reasonable nor necessary to further an important public purpose." (*Id.* ¶¶ 40, 42). Plaintiffs further allege that the increases are "not coupled with increased or improved benefits, improved actuarial soundness of the plan or are needed to address an unexpected emergency of substantial proportion." (*Id.* ¶ 40). Instead, Plaintiffs allege that "the City's action simply shifts some of its costs to its employees in a manner that impairs vested rights." (*Id.*). Plaintiffs also allege that an increase in retirement contributions of one-third is "a significant and substantial burden for firefighters and other public

4

employees to bear," which will cause them to "suffer substantial and irreparable harm." (*Id.* ¶ 41).

Accordingly, Plaintiffs claim that the City of Gadsden's unilateral decision to raise its mandatory contribution rates, without providing for increased or improved benefits and without an important public purpose, constitutes an unconstitutional impairment of a contractual obligation which violates both the Contract Clause of the U.S. Constitution and the parallel provision of the Alabama Constitution. (Complt., Counts I and II, ¶¶ 43-48). To this end, Plaintiffs seek relief in the form of declaratory judgments and injunctive relief. (Complt., Req. For Relief).

## II. STANDARD

Defendants argue that the Plaintiffs's claims are due to be dismissed because they have not alleged any claim upon which relief can be granted. Though Defendants neglect to acknowledge the legal standard pursuant to which they bring their Motion, the court recognizes that the applicable federal rule that governs the Defendants' request is Fed. R. Civ. P. 12(b)(6).

Rule 12(b)(6) of the Federal Rules of Civil Procedure authorizes a motion to dismiss all or some of the claims in a complaint on the ground that its allegations fail to state a claim upon which relief can be granted. Rule 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," in order

to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests," *Conley v. Gibson*, 355 U.S. 41, 47 (1957). The court assumes the factual allegations in the complaint are true and gives the plaintiff the benefit of all reasonable factual inferences. *Hazewood v. Found. Fin. Grp., LLC*, 551 F.3d 1223, 1224 (11th Cir. 2008) (per curiam). However, "courts 'are not bound to accept as true a legal conclusion couched as a factual allegation.'" *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)); *see also Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) ("Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions."). Nor is it proper to assume that the plaintiff can prove facts it has not alleged or that a defendant has violated the law in ways that have not been alleged. *Twombly*, 550 U.S. at 563 n.8 (citing *Associated Gen. Contractors of Cal., Inc. v. Carpenters*, 459 U.S. 519, 526 (1983)). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555 (citations, brackets, and internal quotation marks omitted). "Factual allegations must be enough to raise a right to relief above the speculative

6

level . . . ." *Id*.  Thus, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face,'" i.e., its "factual content . . . allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 555).

## III.   LAW

### A.   Federal Contract Clause

The Contract Clause of the United States Constitution provides: "No State shall . . . pass any . . . Law impairing the Obligation of Contracts . . . ."  U.S. Const., Art. I, § 10, cl. 1.  Judicial analysis of a Contract Clause claim has developed over time into several steps.  In *General Motors Corp. v. Romein*, 503 U.S. 181 (1992), the Supreme Court unanimously outlined the following framework for the initial evaluation of a claim brought under the Contract Clause:

> Generally, we first ask whether the change in state law has "operated as a substantial impairment of a contractual relationship." *Allied Structural Steel Co. v. Spannaus*, 438 U.S. 234, 244, 57 L. Ed. 2d 727, 98 S. Ct. 2716 (1978); *Energy Reserves Group, Inc. v. Kansas Power & Light Co.*, 459 U.S. 400, 411, 74 L. Ed. 2d 569, 103 S. Ct. 697 (1983).  This inquiry has three components: whether there is a contractual relationship, whether a change in law impairs that contractual relationship, and whether the impairment is substantial.

*Id.* at 186; *accord Reliable Tractor, Inc. v. John Deere Constr. & Forestry Co.*, 376

Fed. App'x 938, 941 (11th Cir. 2010) (recognizing three components of Contract Clause analysis set out in *Romein*).  Federal law ultimately controls the analysis of whether there is a contract at issue.  *Romein*, 583 U.S. at 186 ("The question whether a contract was made is a federal question for purposes of Contract Clause analysis, and whether it turns on issues of general or purely local law, we can not surrender the duty to exercise our own judgment."); *Reliable Tractor*, 376 Fed. App'x at 941 ("Because we are asked to interpret the United States Constitution, federal law controls this inquiry.").[2]

The inquiry does not end when the court finds a contractual relationship and a change in law that substantially impairs that contractual relationship.  To survive Contract Clause review, a legislative enactment that constitutes a substantial impairment of a contractual relationship must have a "significant and legitimate public purpose."  *Energy Reserves Grp.,* 459 U.S. at 411 (citation omitted); *accord Flanigan's Enterprises, Inc. v. Fulton County*, 242 F.3d 976, 989 (11th Cir. 2001)[3]

---

[2]  Where questions arise in Contract Clause analysis that are "primarily of state law, [courts] accord respectful consideration and great weight to the views of the state's highest court," although the court is ultimately "bound to decide for [itself] whether a contract was made, what are its terms and conditions, and whether the State has, by later legislation, impaired its obligation."  *State of Indiana ex rel. Anderson v. Brand*, 303 U.S. 95, 100 (1938).

[3]  *Flanigan's Enterprises* was subsequently superceded on other grounds by statute, Fulton County, Ga., Code § 18-79(17) (2001), as recognized in *Flanigan's Enterprises, Inc. v. Fulton County*, 596 F.3d 1265, 1269 (11th Cir. 2010).

(considering whether the enactment is "necessary to meet an important government interest"); *Davken v. City of Daytona Beach Shores, Fla.*, 366 Fed. App'x 40, 41 (11th Cir. 2010) ("A regulation does not violate the Contract Clause so long as it serves a 'significant and legitimate public purpose' . . . ." (citing *Energy Reserves Grp.*, 459 U.S. at 411-12)). The significant and legitimate public purpose may include "the remedying of a broad and general social or economic problem." *Energy Reserves Grp.*, 459 U.S. at 412. However, "the public purpose need not be addressed to an emergency or temporary situation." *Id.*

"Once a legitimate public purpose has been identified, the next inquiry is whether the adjustment of 'the rights and responsibilities of contracting parties [is based] upon reasonable conditions and [is] of a character appropriate to the public purpose justifying [the legislation's] adoption.'" *Id.* (quoting *United States Trust Co. of New York v. New Jersey*, 431 U.S. 1, 22 (1977)).

In sum, therefore, a law or regulation that substantially impairs a contractual relationship does not violate the Contract Clause so long as it serves a significant and legitimate public purpose, is based on reasonable conditions, and is appropriate to the public purpose justifying its enactment. *Davken*, 366 Fed. App'x at 41 (citing *Energy Reserves Grp.*, 459 U.S. at 411-12).

9

**B.     Alabama Contract Clause**

Article I, § 22 of the Alabama Constitution of 1901 states "[t]hat no . . . law . . . impairing the obligations of contracts . . . shall be passed by the legislature . . . ." Ala. Const. Art. I, § 22 (1901).  As the Defendants note in their brief (doc. 11 at 19), there is not an abundance of Alabama law concerning this constitutional provision. However, at least one opinion of the Alabama Supreme Court has recognized that the purpose of the Alabama Contract Clause is the same as the federal Contract Clause: "to preserve sacred the principle of the inviolability of contracts against that legislative interference [that] the history of governments has shown to be so imminent, in view of the frequent engendering of popular prejudice, and the consequent fluctuations of popular opinion."  *Opinion of the Justices No. 333*, 598 So. 2d 1362, 1365 (Ala. 1992) (citing *Edwards v. Williamson*, 70 Ala. 145, 151 (1881)).

Defendants have not cited any authority, nor has the court been able to locate one, that identifies the elements of a cause of action under the Alabama Constitution's contractual impairment provision.  Because the language and purpose of the Alabama Contract Clause is so closely parallel to the federal Contract Clause, and because the court has no authority indicating that the Alabama Contract Clause would be interpreted and applied any differently than its federal counterpart (nor have the

parties argued that it should be applied any differently), the court will analyze Defendants' Rule 12(b)(6) Motion according to the elements developed under the federal Contract Clause.

## IV.   ANALYSIS

At the outset, the court stresses that, for the purposes of a Rule 12(b)(6) motion, the court is bound to consider the factual allegations in the complaint as true and afford the Plaintiff the benefit of all reasonable factual inferences.  The only question before the court is whether the Plaintiffs have alleged sufficient facts in their Complaint to plausibly state a claim upon which relief can be granted.  In their Motion, Defendants overstep the Rule 12(b)(6) inquiry, asking the court to reach several legal conclusions that are too premature for this early stage of the litigation because they would require a judgment as to the merits of Plaintiffs' claims. Moreover, as Plaintiffs observed, "[n]oticeably absent from defendants' brief is any discussion of what is alleged in plaintiffs' fourteen page complaint." **(**Doc. 16 at 5). The court confines its inquiry to whether Plaintiffs' Complaint contains well-pleaded allegations to support each element of their Contract Clause claim,[4] and finds that the

---

[4]  This court has not located a case that directly discusses or identifies the *prima facie* elements of a federal Contract Clause claim for the purpose of assessing a motion to dismiss for failure to state a claim.  Thus, the court turns to the multi-step analytical framework set out in *Romein* and *Energy Reserves Group*, see *supra* Section III.A., to draw out the required "elements" of a well-pleaded Contract Clause claim.  Consistent with that legal framework, the court will assess the sufficiency of Plaintiffs' allegations according to whether the Complaint

allegations are sufficient to survive Rule 12(b)(6) scrutiny.

### A.    Contractual Relationship

The first "element" to a well-pleaded Contract Clause claim is assertion of a contractual relationship.  *Romein*, 503 U.S. at 186.   As previously explained, Plaintiffs' Complaint alleges that the City of Gadsden entered into a contractual relationship with its firefighter employees "when the employees and the City negotiated, agreed to and approved the City's termination of the City's Policemen's and Firemen's Pension Fund, the assignment of such assets and liabilities to the ERS, the election to come under ERS and under [Ala. Code] § 36-27-6, and the agreement to provide extra contributions in the Supplemental Fund for a three (3) year period from 2002 through 2005."  (Complt. ¶ 37).  Further, Plaintiffs allege that "[u]nder the decisions of Alabama courts, the vested rights of participants in the ERS are enforceable contractual rights that may not be unilaterally altered at the will of the state or its political subdivisions."  (*Id.* ¶ 39).[5]

---

plausibly asserts the following four "elements": (1) that a contractual relationship existed; (2) that there was an impairment of that contractual relationship; (3) that the impairment was substantial; and (4) that the substantial contractual impairment did not serve a significant and legitimate public purpose. *Romein*, 503 U.S. at 186; *Energy Reserves Grp.,* 459 U.S. at 411-12.

[5]  In their brief responding to the Defendants' Motion To Dismiss, Plaintiffs cite to a number of cases where Alabama courts have found enforceable or vested rights in public pension systems like the one implicated in this case.  (Doc. 16 at 14-16).  Plaintiffs persuasively note that the primary case relied upon by the Defendants to argue to the contrary, *City of Birmingham v. Penuel*, 242 Ala. 167, 172 (1942), has been displaced by more than 68 years of case law, and is no longer good law.  However, the court does not reach the merits of whether a contractual

The majority of Defendants' briefing on their Motion To Dismiss centers on their invitation for this court to apply the so-called "unmistakability doctrine," as espoused by the First Circuit (and arguably recognized by the Ninth Circuit), to find that no contractual relationship was created between the firefighter employees and the City of Gadsden.  (*See, e.g.,* Doc. 17 at 4 ("[T]his Honorable Court should apply the unmistakability doctrine and find that the Alabama Legislature did not intend to create contractual rights so as to bind the State to where the legislature could never raise the contribution rate.")).  Plaintiffs, in response, challenge the legitimacy and applicability of the "unmistakability doctrine" advocated by the Defendants, arguing that it is "wrong and contrary to [] Supreme Court precedents."  (Doc. 16 at 20-23).

The court declines the Defendants' invitation to apply the contested "unmistakability doctrine" at this stage of the litigation because, even if the court found it to be persuasive, the court finds the issue would be more appropriately reached at a later stage of the litigation.  Even *Parker v. Wakelin*, 123 F.3d 1 (1st Cir. 1997), one of the First Circuit cases upon which the Defendants heavily rely in advocating application of the unmistakability doctrine, was not disposed of at the

---

relationship actually exists for the purposes of this Motion To Dismiss; instead it focuses solely on whether Plaintiffs plausibly have alleged that it does.  Further, the court is not bound by state law in reaching that determination.  *Romein*, 583 U.S. at 186.  Accordingly, the court need not analyze *Penuel* nor any of the Alabama cases cited by the Plaintiffs at this time.

motion to dismiss stage.  In fact, the case underwent "a three-day bench trial and extensive post-trial briefing" at the district court level before the trial judge came to a final decision.  *Parker v. Wakelin*, 937 F. Supp. 46, 49 (D. Me. 1996) ("At trial, Plaintiffs presented extensive documentary and testimonial evidence relevant to the factual questions raised by its constitutional claims.").  Further, the appellate court emphasized "that a blanket answer to the issue of Contract Clause protection for vested employees is not possible, because . . . <u>a detailed examination of the particular provisions of a state pension program will be required prior to determining the nature and scope of the unmistakable contractual rights, if any, that are created by a given state legislature</u>." *Parker v. Wakelin*, 123 F.3d 1, 4 (1st Cir. 1997) (emphasis added).

Moreover, the court finds there to be no clear Supreme Court or Eleventh Circuit precedent dictating application of the unmistakability doctrine to the first element of a Contract Clause claim.  Therefore, the court does not find that the "unmistakability doctrine," which has no Eleventh Circuit precedent, is sufficient at the Rule 12(b)(6) stage to defeat the Plaintiffs' Complaint on its face.  Any argument concerning the potential persuasive value of such doctrine should be raised at a later stage of the litigation, if at all.

### B.    Impairment

The second "element" to a well-pleaded Contract Clause claim is assertion of

an impairment to the contractual relationship. *Romein*, 503 U.S. at 186. Plaintiffs' Complaint alleges that the City of Gadsden's unilateral decision to raise its mandatory contribution rates, without providing for increased or improved benefits and without an important public purpose, constitutes an unconstitutional impairment of a contractual obligation. (See Complt., Counts I and II, ¶¶ 43-48).

Defendants' Motion primarily challenges the legitimacy of Plaintiffs' assertion that a contractual relationship exists sufficient to support their Contract Clause claim, which goes to the first element, discussed *supra*. Because the court has determined that Plaintiffs' allegations are sufficient to survive Defendants' 12(b)(6) challenge on that issue, the court does not find it difficult to conclude that Plaintiffs have likewise sufficiently alleged an impairment to the alleged contractual relationship.

### C.    Substantial Impairment

As to the third requirement of demonstrating that the alleged contractual impairment is "substantial," *Romein*, 503 U.S. at 186, Plaintiffs have alleged that the 30 percent increase in their pension contributions, with no corresponding benefit to ERS participants, is a substantial impairment of their agreement. (Complt. ¶¶ 38–42). The court agrees with Plaintiffs, that for purposes of a motion to dismiss, the allegation of a substantial impairment should be assumed true, and this issue is appropriate for further factual development as the case progresses.

Defendants argue that

> even if somehow there is an impairment to a contract or contractual relationship, there is no allegation that the value of the members' benefits are diminished, or that the soundness of the plan is compromised.   Thus any impairment is not "central to the claim contract."   *Koster* [*v. City of Davenport*, 183 F.3d 762, 768 (8th Cir. 1999)].   This belies any claim that the obligation has been substantially impaired.

(Doc. 11 at 18).   Besides being an out-of-circuit case, the *Koster* case is unlike this case because it involved review of the district court's grant of summary judgment and thus reached the merits of the substantial impairment prong of Contract Clause analysis.   *Koster*, 183 F.3d at 766, 768.   Plaintiffs are not required to plead "detailed factual allegations" in order to survive a Rule 12(b)(6) motion to dismiss.   *Twombly*, 550 at 555.   Instead, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"   *Iqbal*, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 555).

Here, accepting the allegations as true and construing all reasonable inferences in favor of the Plaintiffs, the court can reasonably infer, without reaching the merits, that a substantial impairment of contract occurred such as to trigger constitutional scrutiny.   In other words, the "factual content [of Plaintiffs' Complaint] . . . allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."   *Iqbal*, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 555).

### D.   Significant and Legitimate Public Purpose

The Supreme Court has also indicated that once the court finds there to be a substantial impairment of a contractual obligation sufficient to trigger constitutional scrutiny, the court must next determine whether it has a "significant and legitimate public purpose." *Energy Reserves Grp.,* 459 U.S. at 411 (citation omitted).  To that end, the Complaint alleges that the City of Gadsden's decision to raise the contribution requirements of firefighter participants in the ERS is "neither reasonable nor necessary to further an important public purpose." (*Id.* ¶¶ 40, 42).  Plaintiffs further allege that the increases are "not coupled with increased or improved benefits, improved actuarial soundness of the plan or are needed to address an unexpected emergency of substantial proportion." (*Id.* ¶ 40).  Instead, Plaintiffs allege that "the City's action simply shifts some of its costs to its employees in a manner that impairs vested rights." (*Id.*).  Plaintiffs also allege that an increase in retirement contributions of one-third is "a significant and substantial burden for firefighters and other public employees to bear," which will cause them to "suffer substantial and irreparable harm." (*Id.* ¶ 41).

The court finds that these allegations, coupled with the others detailed above, are sufficient to plausibly state a claim for relief under the Contract Clause.

### E.    The Non-Binding Cases Cited in The Defendants' Submission of Additional Authorities Are Inapposite

The court briefly notes that the two out-of-circuit cases Defendants cited in their submission of additional authorities as "very pertinent if not on point" (doc. 14) are both non-binding and inapposite.  The first case cited, *Crosby v. City of Gastonia,* 635 F.3d 634, 640 (4th Cir. 2011), involved a claim under 42 U.S.C. § 1983 for violation of the Contract Clause that was dismissed for failure to state a claim at the summary judgment stage *after* "[t]he discovery process refined the plaintiffs' claims, limiting the issues before the district court on cross-motions for summary judgment." *Id.* at 638.  Disregarding any material factual differences between *Crosby* and the instant case, the procedural posture alone is enough to distinguish it.  Because the district court's ruling was not resolved on the motion to dismiss standard presented in the instant case, the *Crosby* opinion provides no guidance for analyzing the sufficiency of a complaint to allege a Contract Clause claim under the liberal pleading standards of Rule 8 in conjunction with *Iqbal* and *Twombly*.

The second case cited by Defendants, *United Automobile, Aerospace, Agricultural Implement Workers of America International Union v. Fortuño*, 633 F.3d 37 (1st Cir. 2011), is likewise inapposite.  Unlike *Crosby*, the *Fortuño* opinion does address the sufficiency of a complaint under federal pleading standards.

18

However, the allegations of the plaintiffs in *Fortuño* are not analogous to those of the Plaintiff in the instant case.  Significantly, the complaint in *Fortuño* "<u>acknowledged</u> that Puerto Rico's purported reason for enacting [the law] was 'an alleged fiscal crisis and the potential degradation of government bonds' . . . ." *Id.* at 40 (emphasis added). Thus, based on their admission that a fiscal crisis motivated the law that allegedly substantially impaired their contract, the *Fortuño* plaintiffs could not have prevailed on the merits of their Contract Clause claim.  *See Davken*, 366 Fed. App'x at 41 ("A regulation does not violate the Contract Clause so long as it serves a 'significant and legitimate public purpose' . . . ." (citing *Energy Reserves Grp.,* 459 U.S. at 411-12)). Accordingly, the First Circuit affirmed the district court's holding that a reasonable inference could not be drawn from the complaint that the law was unreasonable or unnecessary to effectuate an important government purpose.    In this case, no similar financial crisis or other important government purpose has been conceded in Plaintiffs' Complaint such that it would defeat their ability to prevail on the merits of their claim.  By contrast, the Complaint in this case avers that Alabama Act 2011-676 is

> <u>neither reasonable nor necessary to further an important public purpose</u>.
> They are not coupled with increased or improved benefits, improved
> actuarial soundness of the plan or are needed to address an unexpected
> emergency of substantial proportion.  Rather, the City's action <u>simply</u>
> <u>shifts some of its costs to its employees</u> in a manner that impairs vested

rights.

(Complt. ¶ 40) (emphasis added).  As such the allegations in Plaintiffs' Complaint materially differ from those assesrted in *Fortuño*.

### F.    Plaintiffs' Claim Under the Alabama Constitution

The Defendants have not convinced the court that Plaintiffs' Complaint fails to state a claim under the federal Contract Clause.  The court has carefully reviewed Plaintiffs' Complaint concerning their federal claim and finds it to withstand Rule 12(b)(6) scrutiny.  For all the same reasons, the court finds that Plaintiffs have likewise alleged sufficient facts under the Alabama Constitution to support a plausible claim that the legislature unlawfully passed a law "impairing the obligations of [Plaintiffs'] contracts."  Ala. Const. Article I, § 22 (1901) ("[N]o . . . law  . . . impairing the obligations of contracts . . . shall be passed by the legislature . . . .").  Defendants offer no arguments for dismissal concerning Plaintiffs' claim under the Alabama Constitution that differ from their arguments seeking dismissal of Plaintiffs' federal Contract Clause claim, and the court will not invent any here.

### V.    CONCLUSION

In sum, the court finds that the Defendants have not demonstrated that the Plaintiffs' Complaint is due to be dismissed under Rule 12(b)(6) for failure to state a claim upon which relief can be granted.  The court agrees with Plaintiffs that

"[f]urther development of a factual record on all prongs of Contract Clause analysis is therefore appropriate."   (Doc. 16 at 26).   Accordingly, the court finds the Defendants' Motion is due to be and is hereby **DENIED**.

**DONE** and **ORDERED** this the 23rd day of February, 2012.

_(signature)_

**VIRGINIA EMERSON HOPKINS**
United States District Judge

21